In the Matter of the Estate of Early G. Tyler Castlio, Deceased, Selma S. SMITH, Administratrix, W. W. A. Child Evangelism Fellowship and Billy Graham Evangelistic Association, Respondents,

v.

DARDENNE PRESBYTERIAN CHURCH, Appellant.

No. 50156.

Supreme Court of Missouri,

Division No. 1.

May 11, 1964.

Gerald M. Smith, Thomas L. Croft, St. Louis, for appellant.

Robert V. Niedner, Niedner, Niedner & Moerschel, St. Charles, for respondents.

HYDE, Presiding Judge.

This action began as an appeal to the Circuit Court from an order of distribution made in the Probate Court of St. Charles County. The issue is the distribution of the residuary estate of Mrs. Early Graves Tyler Castlio (hereinafter called testatrix) which consists mainly of real estate; so we have jurisdiction because title to real estate is involved. Sec. 3, Art. V, Const., V.A.M.S. The Circuit Court found that Dardenne Presbyterian

Church (hereinafter called Dardenne) was not entitled to any of the residuary assets and ordered the residuary estate divided between the other two claimants. Dardenne has appealed.

The provision of testatrix's will involved is as follows: *"EIGHTH:* All the rest, residue and remainder of the property which I may own at the time of my death, both real and personal, and of every kind and description, wherever the same may be situated, I give, devise and bequeath to the BILLY GRAHAM EVANGELISTIC ASSOCIATION, of Minneapolis, Minnesota, to the CHILD EVANGELISM FELLOWSHIP, of Pasadena, California, and to the DARDENNE PRESBYTERIAN CHURCH, of Dardenne, Missouri, in equal shares; provided, however, that said Dardenne Presbyterian Church shall share in such residue only if within nine months after my death it shall have a full-time pastor and be holding church services regularly, and if not, all of the residue shall go to the said Billy Graham Evangelistic Association and Child Evangelism Fellowship in equal shares."

Testatrix's will was made September 29, 1958, and she died June 5, 1961. The parties agree that the nine months' period for Dardenne to comply with the requirements of her will was from June 5, 1961, to March 5, 1962. The court's findings, orally stated in announcing his decision, were (as the evidence showed) "during the nine months after her death there were four church services, two of which were presided over not by a pastor but by a layman, two of which were presided over by pastors—by two different pastors. * * * that—could not possibly, in this Court's opinion, be construed as regular church services and a full-time pastor." The records of Dardenne show its governing body of three members held only three meetings during 1961; one on June 15, 1961, at which only fencing the cemetery was discussed; one on October 28, 1961, the minutes of which state, "We considered the bequest to the Church by will of deceased

member, Mrs. Tyler Castlio. It was decided to try to qualify to accept the bequest"; and one on March 4, 1962, the minutes of which state, "The bequest was farther considered. Plans were made for the cleaning up of the Church property in the spring." There was testimony that, at the March 4, 1962, meeting, they "set up a plan for regular services" and services were started in April and were held every month thereafter (prior to the trial in January 1963) on the fourth Sunday, except in December, because of Christmas, the services were on the fifth Sunday.

Dardenne was an old church, established before the Civil War, and had been served by one pastor for more than 40 years during a period sometime prior to the date testatrix made her will. At the time her will was executed, there was a general feeling of discouragement about the continued existence of Dardenne. It had only ten members who were in the fifty to eighty year age group and there was no ordained minister in charge. Services were sometimes held by laymen and by ministers when found by members. The practice for about twenty years had been to hold services on the last Sunday of each month during good weather months. The Dardenne Church was about 75 yards from a state-improved road but during wet weather automobiles could not leave the road and drive up to the church. In January 1959, the St. Louis Presbytery took jurisdiction over Dardenne and Dr. Stuart Salmon, an ordained minister, who was Chairman of the Presbytery's Committee on Extension, by virtue of that office "became the pastor for that church, the minister in charge." He was and remained pastor of the church at Overland and said his responsibility as to Dardenne was "to see that the property is held, the location continued, that services as advisable in the judgment of the local session are provided and to securing—either do it myself or have it done just as I would in Overland; if I have to be absent from Overland I get a pulpit supply." Dr. Salmon also said he "held funeral memorial

services and sick visitation;" but the evidence as to his activities is very meager. He further testified: "Q And the times and frequency of church services,—has that changed any since September, 1958? A No, sir; there is no reason why it should." However, as noted, it does appear that services were held more regularly after March 1962 than during 1961. A member of Dardenne's governing body stated that it was Dr. Salmon's responsibility to see that we had a minister and that he would be called when they wanted a minister for a service. Dardenne's records show that, when a minister held services there, he was usually paid an honorarium of $25.00.

■ Dardenne's contentions are that the requirement of a full-time pastor was met by the relationship of Dr. Salmon to it. However, during the nine-month period specified in testatrix's will, from the date of her death June 5, 1961, to March 5, 1962, Dr. Salmon only once held services there and two of its four services were held by laymen. Dardenne further contends that the phrase "full-time pastor" required only that the pastor be an ordained minister devoting his full time to pastoral duties and not devoting his full time at Dardenne. It is argued that testatrix knew Dardenne had not for many years had a pastor who devoted his full time to it and did not have the number of members or resources to support a pastor to serve it exclusively. Dardenne also contends that the requirement of "holding regular services" was met "by the holding during the proviso period of services monthly during the good weather months." It is argued that testatrix knew of the long-standing custom of Dardenne to hold only monthly meetings and that is what she meant by "holding regular services." Our view is that even though it be conceded that a full-time pastor would not mean one who had no other church but instead one available for all the pastoral duties required by Dardenne and though it also be conceded that "holding regular services" meant holding only monthly services, nevertheless the evidence shows there was no compliance with either requirement during the proviso period. As stated, during that period, Dr. Salmon held services only once and the four services held were in the four months of June, July, August and September only. The fact that in 1962, services were held in every month from April through December demonstrates that in 1961 Dardenne was not holding regular services even on a good-weather monthly basis and was not actually having the services of a full-time pastor during the proviso period. We are convinced that testatrix's will required more than was done during the proviso period.

Furthermore, Dardenne's October 1961 record indicates that its governing body realized it had not complied with testatrix's condition by stating its decision "to try to qualify to accept the bequest." Nevertheless, nothing was done until the next meeting on March 4, 1962, the last day of the proviso period, when a plan for regular monthly services was made and thereafter put into effect. Dardenne says it substantially complied with the terms of the will by establishing during the proviso period a program for services to be commenced as soon as weather conditions permitted access to the church. However, the condition of testatrix's will was for Dardenne to share in the residue "only if within nine months after my death it shall have a full-time pastor and be holding church services regularly." Certainly this did not mean plan to do so at some time in the future.

Dardenne argues that we must consider the background from which testatrix spoke including her knowledge of its past practices in construing her will and we have done so. As stated in Housman v. Lewellen, 362 Mo. 759, 244 S.W.2d 21, 23, and cases cited: "The keystone of construction in determining the meaning of any will is the intent of the testator. This intent must be gathered from the whole will. * * * When the intent of the testator is found,

the proper construction of the will is solved." Our conclusion is that the provision for a "full-time pastor" meant more than having the responsibility for obtaining a minister, at times requested by Dardenne's elders, in the chairman of a committee of the governing Presbytery even though he occasionally performed some pastoral duties and that the provision for "holding church services regularly" meant more than four services in an entire year with half of them held by laymen.

The judgment is affirmed.

All concur.